# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALBERTA MANGUS,** | : | **CIVIL NO. 1:09-CV-1881** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAUPHIN COUNTY PRISON, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Alberta Mangus, an inmate at the Dauphin County Prison.  Mangus commenced this action by filing a complaint on September 30, 2009. (Doc. 1.) In her initial complaint Mangus named the Dauphin County Prison, and its Warden, Dominick DeRose, as defendants. (Id.) Mangus also named as defendants, without any further identification"All employees of Dauphin County Prison". (Id.) Mangus' initial complaint alleged that the prison was mishandling inmate mail, and requested damages, and injunctive relief, along with an order directing the prison to "provide all indigent inmates who did not arrive with necessities to be provided with them upon arrival (underwear, shoes, socks, bra's) [and] be given writing materials and envelopes upon arrival." (Id.)

Following this initial filing, during an eleven-day period between October 9 and 20, 2009, Mangus made six pro se submissions to the Court in the form of letters

alleging various forms of other misconduct at the prison.(Docs. 12-15, 20 and 21) In an attempt to stem this piecemeal assertion of claims, on October 21, 2009, the Court entered an order directing Mangus to consolidate here claims, and file an amended complaint setting forth all of her assertions against staff at the prison on or before November 13, 2009. (Doc. 16.)

Mangus filed an amended complaint on November 13, 2009, as directed by the Court. (Doc. 22.) This amended complaint fails to identify any particular defendants, and in fact names no parties at all. (Id.) Rather, the amended complaint repeated Mangus' original complaints concerning mail handling at the prison, and then simply listed a series of additional general complaints that Mangus had regarding: (1) the lack of personal privacy at the prison; (2) allegedly inadequate mental health treatment; (3) lack of medical care for Mangus when she fell while housed at the jail; (4) the prison food and diet, and particularly religious diet for adherents of Islam; (5) prison overcrowding; and (6) alleged restrictions on prayer and religious attire. (Id.)

On December 14, 20009, the defendants filed a motion to dismiss Mangus' complaint  (Doc. 24), along with an accompanying memorandum of law. (Doc. 25.) The following day, December 15, 2009, this Court entered an order directing Mangus to respond to this motion. (Doc. 26.) In recognition of the intervening holidays, the Court extended Mangus' response deadline beyond the time period prescribed by the rules of this court, to January 5, 2010. (Id.)

That deadline has now passed without any timely submission by Mangus. Accordingly, this matter is now ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss be granted, since Mangus has failed to exhaust her administrative remedies, has failed to timely prosecute this case, and has failed to state a claim upon which relief can be granted.

## II.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard.

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide

some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

## B.      Mangus' Procedural Default Warrants Dismissal of This Action.

At the outset, Mangus has defaulted on an important procedural deadline in the course of this litigation. This procedural default frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and warrants dismissal of the action at this time.

Specifically, Mangus  has failed to timely respond to this motion to dismiss. Mangus was warned of the implications of failing to reply to defense motions when she was provided with the Standing Order of this Court, and given a copy of Local Rule

7.6 of the Rules of this Court which imposes an affirmative duty on the plaintiff to respond, and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fifteen (15) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within five (5) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>.

Local Rule 7.6 (emphasis added)(Doc. 5.)

This procedural default justifies dismissal of this action. Moreover, in this case, simply offering the plaintiff another opportunity to amend these pleadings would not cure all of the defects in this complaint and would likely be futile, since Mangus was previously ordered to amend her complaint, but has failed to cure the defects in the complaint. Therefore, while in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), granting further leave to amend is not necessary when amendment would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

The principle of futility applies here, where the plaintiff has failed to respond in a timely fashion to a court order, and where her amended complaint remains defective in several fundamental respects. Therefore, allowing further leave to amend is not

necessary, or appropriate, in this case. Rather, the complaint should simply be dismissed.

### C.   Mangus Has Not Stated a Legally Sufficient Cause of Action Against The Individual Defendants and The Dauphin County Prison

In any event, Mangus' complaint fails to state a claim upon which relief can be granted. The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In assessing this motion we must remain mindful that we "should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. [We] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, [we] must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. Conducting this threshold legal analysis we find that the complaint, and amended complaint, continue to be deficient on a number of grounds, and that these deficiencies have not been corrected despite Mangus being provided with an opportunity to amend her complaint. Thus, our review of this complaint, and amended complaint, leads us to conclude that, in its current form, the Plaintiff has failed to state a valid cause of action against only named

individual prison official defendant, Warden DeRose, and the institutional defendant, the Dauphin County Prison.

Liberally construed, Mangus' pleadings allege, in conclusory terms, that these defendants violated her First and Eighth Amendment rights. Yet, Mangus must make some greater threshold showing relating to each defendant to sustain each of these claims.

Thus, with respect to a First Amendment claim, while it is well-settled that inmates "have a constitutional right to free exercise of their religion," Williams v. Sweeney, 882 F. Supp. 1520, 1523 (E.D. Pa. 1995) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987)), prison officials also must be given substantial deference in the administration of their institutions. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Therefore, when a prisoner claims that the right to free exercise of religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). Moreover, in order for a prisoner to claim that the free exercise of religion was violated, the inmate must show that a prison rule or practice was not reasonably related to legitimate penological interests. To determine reasonableness of the regulations, a court must consider four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2)

whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives. Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003).

Similarly, Mangus faces an exacting burden in advancing an Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Mangus must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where

plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.).

More fundamentally, such a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the defendant Warden, acting under color of state law, deprived her of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to the Warden it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

These same principles apply to the Dauphin County Prison as an institutional defendant in this case. With respect to such institutional defendants it is clear that:

> [A] County cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. <u>See Monell v. Department of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, [a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. <u>See Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir.1996).

<u>Berg v. County of Allegheny,</u> 219 F.3d 261, 275 (3d Cir. 2000).

Judged against these standards, Mangus' complaint simply fails. Even liberally construed, the complaint does not reach the demanding standards required for pleading a violation of the United States Constitution. The complaint simply fails to allege facts linking Warden DeRose in any meaningful way to any alleged deprivation of a right guaranteed by the Constitution. Indeed, the complaint contains no factual averments regarding the Warden's personal involvement in any specific acts of alleged wrongdoing. Furthermore, the complaint and amended complaint do not identify any other named persons as defendants. Therefore, these factual recitals, standing alone, simply are inadequate to show personal involvement in alleged wrongdoing of a constitutional dimension by Warden DeRose. The failure to plead facts relating to Warden DeRose–the sole named defendant–or allege his direct involvement in this conduct, compounded by the failure to name any other person as a defendant, is fatal

here since individual liability under § 1983 cannot be predicated solely on respondeat superior.

Similarly, these pleadings do not allege facts that "demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996)." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). Therefore, the complaints simply do not state a valid cause of action against the Dauphin County Prison, as an institutional defendant.

In short, without the inclusion of some further well-pleaded factual allegations, the allegations in these pleadings appear to be little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Iqbal, 127 S.Ct. at 1979. Therefore the individual and institutional defendants are entitled to be dismissed from this complaint.

### D.    Mangus Has Failed to Exhaust Her Administrative Remedies

Finally, in their motion the defendants allege that Mangus has failed to exhaust her administrative remedies by failing to seek any relief through prison grievance proceedings. According to the defendants, Mangus never pursued the inmate grievance process provided for by the Dauphin County Prison with respect to any of the issues raised in her complaints.

With respect to this issue, the defendants have attached to their motion to dismiss a declaration which states that Mangus has been incarcerated at Dauphin County Prison on approximately twenty (20) different occasions, (Doc. 24.2.), and was most recently incarcerated there on July 31, 2009. (Id.) For many years the prison has had in effect Inmate Grievance Guidelines, which are contained in the Dauphin County Prison Inmate Handbook issued to all inmates incarcerated in the facility. (Id.) Manus, like all inmates, was provided a copy of the Inmate Handbook during the intake process upon each of her commitments to the prison. (Id.)

The grievance appeal process that Dauphin Count Prison calls upon inmates to follow four steps: (1) the submission of a grievance for review and determination by the Warden; (2) an appeal of the warden's decision to the Chairman of the Dauphin County Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor. (Doc. 24.2). In this case, a review of Mangus' inmate file reveals that she did not submit any grievances to prison staff about the allegations contained in her Amended Complaint and Complaint; nor did she submit any grievances from any requests that she made to staff. (Id.) In addition there is no record that Mangus ever complied with these grievance procedures by either submitting an appeal to Commissioner Haste regarding the matters described in her

Amended Complaint; by submitting an appeal of any decision of Commissioner Haste to the full Dauphin County Prison Board of Inspectors; or by submitting an appeal to the Dauphin County Solicitor. (Id.)

This apparent, complete failure to avail herself of these grievance procedures may have substantive significance for Mangus since the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial

resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75 -76 (3d Cir. 2000)(citations omitted)

Because of the important policies fostered by this exhaustion requirement, it has

been held that there is no futility exception to § 1997e's exhaustion requirement. Id.

Instead, courts have typically required across-the-board administrative exhaustion by

inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court. <u>See, e.g.</u>, <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000); <u>Bolla v. Strickland</u>, 304 F. App'x. 22 (3d Cir. 2008); <u>Jetter v. Beard</u>, 183 F. App'x 178 (3d Cir. 2006).

In this case, the Defendants' exhaustion argument relies upon matters outside the pleadings, including a detailed declaration by Warden DeRose. Since the motion relies upon on matters outside the pleadings, we will treat the defendants' motion to dismiss on exhaustion grounds as a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 12(d).[1]

---

[1]We are mindful of the fact that Rule 12(d), provides that when a motion to dismiss is treated as a Rule 56 summary judgment motion, "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." In this case Mangus has been provided with this reasonable opportunity. She was given three weeks to respond to the motion, yet has allowed the period for filing a response to lapse without in any way contradicting or challenging these factual assertions. Therefore, the procedural prerequisites to treating this motion as a summary judgment motion have been fully satisfied here. Indeed, to rule otherwise would allow Mangus to hold this ruling hostage through her own inaction.

Summary judgment is appropriate when: (1) there are no material facts in dispute; and (2) one party is entitled to judgment as a matter of law. See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56 ( c )). A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id.; Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show "'that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party

moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

Viewed in light of these guiding legal tenets, it is clear that the defendants are entitled to summary judgment on the issue of Mangus' failure to exhaust her administrative remedies. The defendants' motion and declaration, which are unrebutted, document a complete, and completely unjustified, failure by Mangus to abide by existing prison grievance procedures. Mangus has not challenged, or even addressed, this defense in any fashion. Accordingly, on this record, where Mangus has not chosen to reply to the defendants' motion despite being provided three weeks in

which to file a response, there is no material issue of fact regarding Mangus' failure to exhaust her administrative remedies. Moreover, given this undisputed, and total, failure to exhaust administrative remedies, the defendants are entitled as a matter of law to a judgment on their behalf under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) since Mangus has not complied with the act's requirement that: "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

### III.  <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion to Dismiss (Doc. 24) be GRANTED. The Plaintiff is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only

in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

Dated: January 8, 2010